_____
Honorable Hilary L. Barnes
United States Bankruptcy Judge

Entered on Docket
September 12, 2023

HOLLY E. ESTES, ESQ.
Nevada Bar No. 11797
Estes Law, P.C.
605 Forest Street
Reno, Nevada 89509
Telephone (775) 321-1333
Facsimile (775) 321-1314
**Email: hestes@esteslawpc.com**

Counsel for Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No. 22-50366-hlb |
| SCOTT A. CORRIDAN, | Chapter 7 |
| Debtor. | **ORDER GRANTING AMENDED MOTION TO SELL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS [223 PELTON LANE, INCLINE VILLAGE, NEVADA] AND PAY REAL ESTATE COMMISSION** |
| | Hearing Date:   September 5, 2023 Hearing Time:  2:00 p.m. |

The Court, having heard the *Amended Motion to Sell Property Free and Clear of Liens, Claims and Interests [223 Pelton Lane, Incline Village, Nevada] and Pay Real Estate Commission* (Dkt. 216) ("Sale Motion") filed by Chapter 7 Trustee Edward M. Burr ("Trustee"); the Trustee, appearing individually and by and through his counsel, Holly E. Estes, Esq., David M. Shaheen and Linda F. Shaheen, Trustees of the David and Linda Shaheen Trust, as first executed on March 5,

1

2012, as thereafter amended on August 1, 2014, and amended again on June 29, 2017 (hereinafter ("Buyers"), appearing through their counsel, Amy N. Tirre, Esq., Debtor Scott A. Corridan, appearing through his counsel, Kevin A. Darby Esq., Pingora Loan Servicing, LLC, appearing through its counsel, Melissa A. Vermillion, Esq., Thomas Glazier, appearing through his counsel, Jamie P. Dreher, Esq., Oswald Construction, LLC, Kevin Horowitz, sole proprietor of St. Helena Construction Company, and Big Water Investments, LLC, appearing through their counsel, L. Edward Humphrey, Esq., Terre and Steven Baldwin appearing through their counsel, Nathan R. Zeltzer, Esq., the Nevada Department of Taxation appearing through its counsel, Kayla D. Dorame, Esq., and Rock & Rose, Inc., appearing through its counsel, Louis M. Bubala, Esq.; the Court, having reviewed the Sale Motion, as well as the other pleadings and papers filed in support of and in response to the Sale Motion, specifically Docket Nos. 217, 221, 222, 238, 240, 241, 242, 244, 245, 246, 250, 257, 259, 261, and 262 and having considered the arguments of counsel and having stated its findings of fact and conclusions of law on the record in open court, which are incorporated herein pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 9014 of the Federal Rules of Bankruptcy Procedure and good cause appearing,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

1. This Court has jurisdiction to consider the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).

2. The Buyers are good faith purchasers for value under 11 U.S.C. § 363(m) and as such are entitled to all the protections afforded thereby based upon the following undisputed evidence, which the Court has reviewed: the *Declaration of David F. Shaheen in Support of Good Faith*

*Finding for Buyers Under 11 U.S.C. § 363(m)* filed on August 8, 2023 (Dkt. 221); *Declaration of Linda M. Shaheen in Support of Good Faith Finding for Buyers Under 11 U.S.C. § 363(m)* filed on August 8, 2023 (Dkt. 222); *Declaration of Edward M. Burr in Support of Amended Motion to Sell Property Free and Clear of Liens, Claims and Interests [223 Pelton Lane, Incline Village, Nevada] and Pay Real Estate Commission* (Dkt. 241); and *Declaration of Laura Kirsch in Support of Amended Motion to Sell Property Free and Clear of Liens, Claims and Interests [223 Pelton Lane, Incline Village, Nevada] and Pay Real Estate Commission* filed on August 22, 2023 (Dkt. 242).

3.    Based upon testimony by declaration identified in the previous paragraph, which is undisputed, the Court hereby specifically finds that: (a) the residential real property known as 223 Pelton Lane, Incline Village, Nevada 89451 with APN 130-163-23 ("the Property") was listed with the Multiple Listing Service and marketed for sale at a price of $2,000,000 on July 27, 2023; (b) approximately 30 potential buyers viewed the Property within the days following July 27, 2023; (c) the Trustee received six (6) offers to purchase the Property; (d) the Trustee, exercising his reasonable business judgment, selected and accepted the Buyers' offer made on July 31, 2023, which he viewed as the "highest and best" offer among the competing offers for the Property; (e) Buyers' offer is for the Property "as is" in the amount of $3,050,000 ("Purchase Price") and will be paid in all cash with no financing or appraisal contingencies and requests that closing occur within 3-days after bankruptcy court approval of the Sale Motion; (e) the Buyers made their offer in good faith as a result of arms-length negotiations and are ready, willing and able to close escrow; (f) there is no evidence of collusion in the sale process; and (g) there is no evidence of any previous relationship or connection, business or otherwise, among the Trustee, the Debtor and the Buyers.

4.    Steven Baldwin, Terre Baldwin, Big Water Investments, LLC and Incline Law Group, LLP, Rock & Rose, Inc., Shawn B. Meador, Esq., and Woodburn and Wedge, and Wyman Development Company, are creditors who hold separate judgments against the Debtor and they

assert that their claims are secured by judgment liens against the Property (hereinafter collectively referred to as the "Judgement Creditors").  The validity of the Judgement Creditors' respective judgment liens are in bona fide dispute ("Disputed Liens") on account of the Trustee's Complaint filed on September 4, 2023 in Adversary Proceeding No. 23-05013-HLB ("Adversary Proceeding")1.  All of the Judgement Creditors consent to the sale of the Property free and clear of their interests with the validity of these Disputed Liens to be resolved through the Adversary Proceeding. To the extent any Judgement Creditor is ultimately found to have a valid lien after an adjudication of that issue on the merits or resolution of that issue between the parties and approved by the Court, The Judgement Creditors' Disputed Lien, if any, shall attach to the proceeds from the sale of the Property, and shall not attach to the Property itself.

5.       Streamscapes has recorded a lien release and holds no claim secured by an existing lien against the Property. Accordingly, Streamscapes shall receive no payment from the sale proceeds.

6.       The Court approves the stipulation placed on the record at the hearing on the Sale Motion between the Trustee and Kevin Horowitz, sole proprietor of St. Helena Construction Company ("Horowitz"), in which those parties stipulated and agreed that: (a) the Property shall be sold free and clear of any alleged lien, claim, or interest of Horowitz; (b) to the extent Horowitz is ultimately found to have a valid lien after an adjudication of that issue on the merits or resolution of that issue between the parties and approved by the Court, Horowitz's lien shall attach to the proceeds from the sale of the Property, and shall not attach to the Property itself.

7.       The Court approves the stipulation placed on the record at the hearing on the Sale Motion between the Trustee and Oswald Construction, LLC ("Oswald"), in which those parties

---

1 This Order does not resolve the amount of any allowed claims to be paid to the Judgement Creditors, which shall be resolved as part of the adversary proceeding, or other order of the Court.

stipulated and agreed that (a) Oswald would not record any Notice of Lien, or workman's lien against the Property pursuant to NRS Chapter 108 for the work it performed on the Property, which concluded on June 15, 2023; and (b) Oswald shall be paid the amount of $8,337.64 directly from escrow in full satisfaction of any and all amounts due to it for labor and materials.

8.    The sale satisfies the requirements of 11 U.S.C. §363(b), and §363(f)(3) and (4).

9.    Notice of the Sale Motion and the hearing on the Sale Motion was proper.  On August 8, 2023, the Trustee's counsel served the *Notice of Hearing on Amended Motion to Sell Property Free and Clear of Liens, Claims and Interests [223 Pelton Lane, Incline Village, Nevada] and Pay Real Estate Commission* upon the entire creditor mailing matrix ("Notice") and filed a Certificate of Service on August 21, 2023 evidencing the same (Dkt. 240).

10.    On account of the representations made by counsel at the hearing, the Court finds that no creditor or party in interest objects to or opposes the sale of the Property.  To the extent any other objection was raised by any party in interest, it is hereby overruled.

**IT IS HEREBY ORDERED THAT**:

1.    <u>Sale Motion</u>.  The Sale Motion is GRANTED.  The Trustee is authorized to sell the estate's right, title, and interest in the residential real property known as 223 Pelton Lane, Incline Village, Nevada 89451 with APN 130-163-23 ("the Property") to the Buyers for the amount of $3,050,000.00 ("Purchase Price") pursuant to the terms of the Residential Purchase Agreement and its addenda attached hereto as **Exhibit 1.**

2.    <u>Transfer of Property</u>.  Title to the Property is currently held in the name of the Scott Alan Corridan Family Trust, a self-settled revocable inter-vivos trust where the Debtor is the settlor, Trustee and beneficial owner (the "Corridan Trust").  The Debtor in his capacity as Trustee of the Corridan Trust shall transfer legal title to the Property to himself individually, and the Trustee shall transfer legal title to the Property to the Buyer.

5

3.      <u>Sale Pursuant to Section 363(b) and (f)</u>.    The bankruptcy estate's right title and interest in the Property shall be transferred to Buyers free and clear of all liens, claims and interests pursuant to Section 363(b), and 363(f)(3) and (4) of Title 11 of the United States Code ("the Bankruptcy Code").

4.      <u>Notice</u>.      The Notice was adequate, reasonable, appropriate, and proper under the circumstances and complied with Rules 2002, 6004, 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

5.      <u>Approval of Residential Purchase Agreement</u>.  The Residential Purchase Agreement and all transactions, documents and instruments contemplated therein and all of the terms and conditions thereof are hereby approved.  The failure specifically to include any particular provision of the Residential Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Residential Purchase Agreement (including, but not limited to, all related agreements, documents, and instruments contemplated thereby) be authorized and approved in its entirety.

6.      <u>Transfer of Property Free of Claims, Liens and Interests</u>.  Pursuant to Sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Trustee is authorized to and shall transfer the Property in accordance with the terms of the Residential Purchase Agreement using the escrow opened ("Escrow No. 2097775") with Stewart Title Company or such other title company that the Trustee and Buyer mutually consent to in order to timely close the transaction as contemplated by the Residential Purchase Agreement ("Title Company"). The Property shall be transferred to the Buyers and, upon Closing (defined below), such transfer shall (i) be valid, legal, binding, and effective; (ii) vest the Buyers with all right, title, and interest in the Property; and (iii) upon payment of the Purchase Price, such transfer to the Buyers shall be free and clear of all Claims (as defined in Section 101(5) of the Bankruptcy Code), liens and interests (collectively, "Claims, Liens and

Interests") in accordance with section 363(b) and (f) of the Bankruptcy Code. All Claims, Liens and Interests in the Property shall attach to the proceeds of the sale transaction, in the same order of their priority and with the same validity, force, and effect that they now have against the Property, subject to any claims and defenses the Trustee and the bankruptcy estate may possess with respect thereto. The Claims, Liens and Interests which the Property shall be free of upon the transfer to Buyer, include, but are not limited to, those that appear in the ALTA Commitment for Title Insurance issued by Stewart Title Company at Part II, Schedule B, Requirements ##9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26: a copy of these Requirements is attached hereto as **Exhibit 2.**

7.    <u>Claims with Liens to be Paid Through Escrow</u>.  The Title Company is authorized to pay in full through escrow the following Claims, Liens and Interests in the amounts pursuant to their respective demands submitted to the Title Company:

| Name of Creditor | Nature Of Security Interest | Approximate Amount of Secured Claim | Distribution |
|---|---|---|---|
| Pingora Loan Servicing, LLC as successor in interest to Northpointe Bank, as successor in interest to Northpointe Bank, a Michigan Banking Corporation as successor in interest to Everett Financial, Inc. | First Position Deed of Trust first recorded November 14, 2017, Doc. No. 4763363 and including subsequent assignments per Doc. Nos. 4967825, 5319808, and 5349533 | $461,815.94 | Paid pursuant to its demand submitted to Title Company upon close of escrow |
| Ernest J. Polati, Jr., Trustee of the Shelter Trust Created under the Polati 1996 Trust dated January 3, 1996 | Second Position Deed of Trust recorded November 14, 2017, Doc. No. 4763364 | $156,717.00 | Paid pursuant to its demand submitted to Title Company upon close of escrow |

| Thomas Glazier | Third Position Deed of Trust recorded February 14, 2020, Doc. No. 5001297 | $588,699.31 | Paid pursuant to its demand submitted to Title Company upon close of escrow |
|---|---|---|---|
| Department of Employment Training and Rehabilitation, Employment Security Division | Judgement Lien recorded May 10, 2018, Doc. No. 4813096[1] | $9,131.24 plus interest, fees, and costs | Paid pursuant to its demand submitted to Title Company upon close of escrow |
| State of Nevada, Department of Taxation | Tax Lien recorded May 18, 2018, Doc. No. 4815646 | $24,142.51 plus accruing interest | Paid pursuant to its demand submitted to Title Company upon close of escrow |
| Department of Employment Training and Rehabilitation, Employment Security Division | Judgement Lien recorded July 17, 2018 Doc. No. 4833151 | $3,235.68 plus interest, fees, and costs | Paid pursuant to its demand submitted to Title Company upon close of escrow |
| Department of Employment Training and Rehabilitation, Employment Security Division | Judgement Lien recorded April 17, 2019 Doc. No. 4902836 | $2,499.88 plus interest, fees, and costs | Paid pursuant to its demand submitted to Title Company upon close of escrow |
| State of Nevada, Department of Taxation | Tax Lien recorded October 22, 2019, Doc. No. 4965121, as amended by Doc. No. 4971970 and Doc. No. 5105976 | $11,180.09 plus accruing interest | Paid pursuant to its demand submitted to Title Company upon close of escrow |
| State of Nevada, Department of Taxation | Tax Lien recorded September 16, 2021, Doc. No. 5227222, as amended by Doc. No. 5309147 | $87,852.54 plus accruing interest | Paid pursuant to its demand submitted to Title Company upon close of escrow |

---

[1] All references to Doc. No. Shall be to document numbers of the Official Records Washoe County, Nevada.

| Oswald Construction, LLC | Contractor who performed work within 90 days who was entitled to file Notice of Lien per NRS 108 | $8,337.64 | Paid $8,337.64 by Title Company upon close of escrow |
| **Approximate Total** | | **$1,353,611.83** | **$1,353,611.83** |

With these Claims, Liens and Interest being paid in full directly from escrow, the title to the Property shall be transferred to the Buyers free and clear of these Liens, Claims and Interests.

8.    <u>Disputed Liens, Claims and Interests not to be Paid Through Escrow</u>. In order to provide the Buyers with title that is free and clear of Liens, Claims and Interests, the Title Company shall transfer title to the Property to the Buyers free and clear of the following "Disputed Liens, Claims and Interests" pursuant to 11 U.S.C. §363(b) and (f), which Disputed Claims, Liens and Interests shall <u>not</u> be paid through escrow.  The following creditors who are ultimately determined to have a valid and existing lien, claim or interest in the Property, to the extent so determined by a later proceeding or order of the Court, shall have their lien, claim or interest attach to the sale proceeds, and shall not have any lien claim or interest against the Property.  Release of the following liens from title to the Property shall not be construed as a release of a lien on the sale proceeds, nor to mean that the debt has been satisfied.

| Name of Creditor | Nature Of Disputed Security Interest | Approximate Amount of Alleged Secured Claim | No Distribution through Escrow |
|---|---|---|---|
| Steven Baldwin & Terre Baldwin | Judgment recorded July 31, 2019, Doc. No. 4936398 | $111,473.56 plus interest and costs | Security interest, if any, attaches to sale proceeds |
| Streamscapes | Claim of Lien, recorded August 30, 2019, Doc. No. 4947245 | $0 | Lien Release Recorded |

| Big Water Investments, LLC, and Incline Law Group, LLP | Judgment recorded December 16, 2019, Doc. No. 4982828 | $20,908.02 plus interest, fees and costs | Security interest, if any, attaches to sale proceeds |
|---|---|---|---|
| Rock & Rose, Inc. | Judgment recorded February 11, 2020, Doc. No. 4999922 | $69,037.81 plus interest, fees and costs | Security interest, if any, attaches to sale proceeds |
| Shawn B. Meador, Esq., Woodburn and Wedge | Judgment recorded March 31, 2020, Doc. No. 5015679 | $40,234.61 plus interest and costs | Security interest, if any, attaches to sale proceeds |
| Wyman Development Company | Claim for Lien recorded May 26, 2020, Doc. No. 5032859 | $94,041.35 plus interest and costs | Security interest, if any, attaches to sale proceeds |
| Kevin Horowitz, Sole Proprietor of St. Helena Construction Company | Judgement recorded June 29, 2022, Doc. No. 5314943 | $321,107.00 plus costs and interest | Security interest, if any, attaches to sale proceeds |
| **Approximate Total** | | **$656,802.35** | |

9.    Debtor's Homestead Exemption. The Debtor shall be paid $400,000 of his claimed homestead exemption by the Title Company upon close of escrow; the remaining $205,000 of Debtor's claimed homestead exemption shall be held by the Trustee pending further order of the Court.

10.    Approval of Real Estate Sales Commission.  The real estate sales commission in the amount of 6% as provided in the Residential Purchase Agreement is hereby approved.

11.    Remaining Sales Proceeds.   The remaining sales proceeds after payment of (1) Claims with Liens to be Paid Through Escrow, (2) the 6% real estate commissions, and (3) the $400,000.00 to the Debtor on account of his claimed homestead exemption shall be delivered to the Chapter 7 Trustee to be held in a trust account pending a future order of the Court.

12.     <u>Closing Date</u>.  As defined in the Residential Purchase Agreement, the Closing Date or Closing shall occur within three (3) business days of the entry of this Sale Order, or if necessary, at such later time as mutually agreed by the Trustee and Buyers.

13.     This Order (a) shall be effective as a determination that, as of the Closing, except as set forth in the Residential Purchase Agreement or this Order, (i) no liens, claims, liabilities, and encumbrances relating to the Property will be assertable against the Buyers, their successors or assigns or the Property, whether or not due and payable as of the Closing, (ii) the Property shall have been transferred to the Buyers free and clear of all liens, claims, liabilities, and encumbrances, and (iii) the conveyances described herein have been effected; and (b) is and shall be binding upon and govern the acts of persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title.

14.     If any Person who has recorded a document evidencing a Claim, Lien or Interest in or against the Property shall not have delivered to the Title Company prior to Closing, in proper form for filing and executed by the appropriate parties, reconveyances of deeds of trust, releases of liens, or instruments of satisfaction with respect to the Property (collectively, the "Release Documents"), then with regard to the Property, (i) the Trustee is hereby authorized to, and the Buyers are hereby authorized to, execute and file such statements, instruments, releases, and other documents on behalf of the Person with respect to the Property; and (ii) the Buyers are hereby authorized to record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of any Claims, Liens and Interests; <u>provided that,</u> notwithstanding anything in this Sale Order or the Residential Purchase Agreement to the contrary, the provisions of this Sale Order shall be self-executing, and neither

the Debtors nor Buyers shall be required to execute or file releases, reconveyances, statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

15.    Good Faith. The transactions contemplated by the Residential Purchase Agreement are undertaken by the Trustee and the Buyers without collusion and in good faith, as that term is used in Section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein of the sale transaction shall neither affect the validity of the sale transaction nor the transfer of the Property to the Buyers free and clear of Claims, Liens, and Interests unless such authorization is duly stayed before the Closing Date pending such appeal. The Buyers are good faith purchasers of the Property and are granted and entitled to all of the benefits and protections afforded to a good faith purchaser under Section 363(m) of the Bankruptcy Code. The Trustee and the Buyers will be acting in good faith if they proceed to consummate the sale at any time after entry of this Sale Order.

16.    No Avoidance of Residential Purchase Agreement. Neither the Trustee, the Estate nor the Buyers has engaged in any conduct that would cause or permit the Residential Purchase Agreement to be avoided or costs and damages to be imposed under Section 363(n) of the Bankruptcy Code.  Accordingly, the Residential Purchase Agreement, and the sale transaction shall not be avoidable under Section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to Section 363(n) of the Bankruptcy Code in respect of the Residential Purchase Agreement or the sale transaction.

17.    No Successor Liability. The Buyers shall not as a result of acquiring the Property: (i) be a successor to the Debtor, the Trustee, or the Estate; (ii) have, defacto or otherwise, merged or consolidated with or into the Debtor, the Trustee or the Estate; or (iii) be a continuation or substantial continuation of the Debtor, the Trustee or the Estate.  The transfer of the Property to

Buyers under the Residential Purchase Agreement shall not result in (i) the Buyers or the Property having any liability or responsibility for any Claims, Liens or Interests against the Estate; (ii) the Buyers or the Property having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Claim against the Debtor or the Estate; or (iii) the Buyers having any liability or responsibility to the Estate except as otherwise expressly set forth in the Purchase Agreement.

18.     <u>Waiver of Bankruptcy Rules 6004(h) and 7062.</u> Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 7062, or any applicable provisions of the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Nevada, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) is hereby expressly waived and shall not apply.  Time is of the essence in closing the Sale Transaction, and the Trustee and the Buyers may close the sale transaction as soon as practicable.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing Date, or risk its appeal being foreclosed as moot.

19.     <u>Binding Effect of Sale Order.</u> The terms and provisions of the Residential Purchase Agreement and this Sale Order shall be binding in all respects upon the Debtor, the Trustee, the Estate and its creditors, any affected third parties, all holders of equity interests in the Debtor, all holders of any Claims, whether known or unknown, against the Debtor, any holders of Claims against or on all or any portion of the Property, including, but not limited to, all lienholders, holders of leasehold interests, governmental units, and any trustees, examiners, administrators, responsible officers, estate representatives,  and each of their respective affiliates, successors, and assigns. The Residential Purchase Agreement and this Sale Order shall inure to the benefit of the Debtor, the Trustee, the Estate its creditors, the Buyers, and each of their respective successors and assigns. The

Residential Purchase Agreement, the sale transaction, and this Sale Order shall not be subject to rejection or avoidance by the Debtor, the Estate, its creditors, or any trustee, examiner, or receiver.

20.    Conflicts; Precedence. In the event that there is a direct conflict between the terms of this Sale Order, the Residential Purchase Agreement, or any documents executed in connection therewith, the provisions contained in this Sale Order shall govern.

21.    Modification of Residential Purchase Agreement. The Residential Purchase Agreement, and any other documents or other instruments executed in connection therewith, may be modified, amended, or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of the Court; provided that (i) any such modification, amendment, or supplement shall not materially change the terms of the Residential Purchase Agreement or any documents or other instruments executed in connection therewith.

22.    Retention of Jurisdiction. This Court shall retain exclusive jurisdiction to, among other things, interpret, enforce, and implement the terms and provisions of this Sale Order, the Residential Purchase Agreement, all amendments thereto, related documents or instruments and any waivers and consents thereunder (and of each of the agreements executed in connection therewith), to adjudicate disputes related to this Sale Order, the Residential Purchase Agreement, and to enforce the injunctions set forth herein.

**IT IS SO ORDERED.**

PREPARED AND SUBMITTED BY:
ESTES LAW, P.C.

By:_____*/s/ Holly E. Estes*_____
    HOLLY E. ESTES, ESQ.
    Attorney for Chapter 7 Trustee

In accordance with LR 9021, an attorney submitting this document certifies as follows (check one):

14

___ The court has waived the requirement set forth in LR 9021(b)(1).

___ No party appeared at the hearing or filed an objection to the motion.

_X__ I have delivered a copy of this proposed order to all attorneys who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

**APPROVED**/DISAPPROVED/FAILED TO RESPOND

LAW OFFICES OF AMY N. TIRRE

   */s/ Amy N. Tirre*
_____
Amy N. Tirre, Esq.
Attorney for the Buyers


**APPROVED**/DISAPPROVED/FAILED TO RESPOND

DARBY LAW PRACTICE

   */s/ Kevin A. Darby*
_____
Kevin A. Darby, Esq.
Attorney for Scott A. Corridan


**APPROVED**/DISAPPROVED/FAILED TO RESPOND

BARRETT DAFFIN FRAPPIER
TREDER & WEISS, LLP

   */s/ Melissa A. Vermillion*
_____
Melissa A. Vermillion, Esq.
Attorney for Pingora Loan Servicing, LLC


**APPROVED**/DISAPPROVED/FAILED TO RESPOND

DOWNEY BRAND

   */s/ Jamie P. Dreher*
_____
Jamie P. Dreher, Esq.
Attorney for Thomas Glazier

**APPROVED**/DISAPPROVED/FAILED TO RESPOND

HUMPHREY O'ROURKE LAW PLLC


*/s/ L. Edward Humphrey*
_____
L. Edward Humphrey, Esq.
Attorney for Oswald Construction, LLC,
Kevin Horowitz, sole proprietor of St. Helena
Construction Company, and
Big Water Investments, LLC



**APPROVED**/DISAPPROVED/FAILED TO RESPOND

LAW OFFICES OF NATHAN R. ZELTZER


*/s/ Nathan R. Zeltzer*
_____
Nathan R. Zeltzer, Esq.
Attorney for Terre and Steven Baldwin


**APPROVED**/DISAPPROVED/FAILED TO RESPOND

NEVADA ATTORNEY GENERAL'S OFFICE


*/s/ Kayla D. Dorame*
_____
Kayla D. Dorame, Esq.
Attorney for Nevada Department of Taxation Kayla D. Dorame, Esq.



**APPROVED**/DISAPPROVED/FAILED TO RESPOND

KAEMPFER CROWELL


*/s/ Louis M. Bubala*
_____
Louis M. Bubala, Esq.
Attorney for Rock & Rose, Inc.

___ I certify that this is a case under chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

###

# EXHIBIT "1"

DocuSign Envelope ID: 5F2ED83201B72A140BA-BB45-1D682963D264



## RESIDENTIAL PURCHASE AGREEMENT

(Joint Escrow Instructions)



1  Date: **7/30/2023**

2  **David M Shaheen**          **Linda F Shaheen**          ("Buyer", hereby offers to purchase

3  **223    Pelton**                                              **Lane** ("Property"),

4  within the city or unincorporated area of          **Incline Village**          , County of          **Washoe**

5  State of Nevada, Zip      **89451**      A.P.N #          **130-163-23**          for the purchase price of

6  $      **3,050,000.00**      (          **Three Million Fifty Thousand**          (dollars) ("Purchase Price")

7  on the terms and conditions contained herein: BUYER ☒ does -OR- ☐ does not intend to occupy the Property as a residence.

8
9  ### Buyer's Offer

10  **1.    FINANCIAL TERMS & CONDITIONS:**

11  $ 100,000.00  **A. EARNEST MONEY DEPOSIT** ("EMD") is ☐ presented with this offer -OR- ☒ Wired
12    **Upon Court Approval**                     . Upon Acceptance, Earnest Money to be
13    deposited within one (1) business day from acceptance of offer (as defined in Section 23 herein) -OR- **2**
14    business days if wired to: ☒ Escrow Holder, ☐ Buyer's Broker Trust Account -OR- ☐ Seller's Broker's Trust
15    Account. *(NOTE: It is a felony in the State of Nevada—punishable by up to four years in prison and a $5,000 fine—to*
16    *write a check for which there are insufficient funds. NRS 193.130(2)(d).)*

17
18  $    0.00    **B. ADDITIONAL DEPOSIT** to be placed in escrow on or before (date) _____ . The
19    additional deposit ☐ will —OR— ☐ will not be considered part of the EMD. (Any conditions on the
20    additional deposit should be set forth in Section 29 herein.)

21
22  $    0.00    **C. THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING FOR A <u>NEW LOAN</u>:**

23    ☐ Conventional, ☐ FHA, ☐ VA, ☐ Other (specify) _____

24  $    0.00    **D. THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING TO <u>ASSUME THE</u>**
25    **<u>FOLLOWING EXISTING LOANS(S)</u>:**
26    ☐ Conventional, ☐ FHA, ☐ VA, ☐ Other (specify) _____.

27    Interest: ☐ Fixed rate, _____ years —OR— ☐ Adjustable Rate, _____ years. Seller further agrees to
28    provide the Promissory Note and the most recent monthly statement of all loans to be assumed by Buyer
29    within FIVE (5) calendar days of acceptance of offer.

30
31  $    0.00    **E. BUYER TO EXECUTE A <u>PROMISSORY NOTE SECURED BY DEED OF TRUST</u> PER TERMS**
32    **IN THE "FINANCING ADDENDUM" which is attached hereto.**

33
34  $ 2,950,000.00  **F. BALANCE OF PURCHASE PRICE** (Balance of Down Payment) in Good Funds to be paid prior to
35    Close of Escrow ("COE").

36
37  $ 3,050,000.0  **G. TOTAL PURCHASE PRICE** (This price DOES NOT include closing costs, prorations, or other fees
38    and costs associated with the purchase of the Property as defined herein.)

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is
otherwise modified by addendum or counteroffer.

Buyer's Name(s):  **David M Shaheen**          **Linda F Shaheen**    BUYER(S) INITIALS: _DS_ / _LS_ /

Property Address:  **223   Pelton**                 **Lane**    SELLER(S) INITIALS: _EMB_ / /



DocuSign Envelope ID: 52ED3320-B72A-46BA-BB45-1D682963D264

1  **2.    ADDITIONAL FINANCIAL TERMS & CONTINGENCIES:**

2  **A.    NEW LOAN APPLICATION:** Within  N/A  business days of Acceptance, Buyer agrees to (1) submit
3  completed loan application to a lender of Buyer's choice and (2) furnish a preapproval letter to Seller based upon a standard
4  factual credit report and review of debt-to-income ratios. F Buyer fails to complete any of these conditions within the
5  applicable time frame, Seller reserves the right to terminate this Agreement. In such event, both parties agree to cancel the
6  escrow and return EMD to Buyer. Buyer shall use Buyer's best efforts to obtain financing under the terms and conditions
7  outlined in this Agreement.

8

9  **B.    APPRAISAL CONTINGENCY:** Buyer's obligation to purchase the property is contingent upon the
10  property appraising for not less than the Purchase Price. If after the completion of an appraisal by a licensed appraiser, Buyer
11  receives written notice from the lender or the appraiser that the Property has appraised for less than the purchase price (a
12  "Notice of Appraised Value") Buyer may attempt to renegotiate  or cancel the RPA by providing written notice to the Seller
13  (with a copy of the Appraisal) no later than  N/A  calendar days following the date of Acceptance of the RPA; whereupon the
14  EMD shall be released to the Buyer without the requirement of written authorization from Seller. **IF this Residential**
15  **Purchase Agreement is not cancelled, in writing on or before the Appraisal Deadline, Buyer shall be deemed to have**
16  **waived the appraisal contingency.**

17

18  **C.    LOAN CONTINGENCY:** Buyer's obligation to purchase the property is contingent upon Buyer obtaining
19  the loan referenced in Section 1(C) or 1(D) of the RPA unless otherwise agred in writing. Buyer shall remove the loan
20  contingency in writing, attempt to renegotiate, or cancel the RPA by providing written notice to the Seller no later than
21  N/A  calendar days following the date of Acceptance of the RPA; whereupon the EMD shall be released to the Buyer without
22  the requirement of written authorization from Seller. **IF this Residential Purchase Agreement is not cancelled, in writing**
23  **on or before the Loan Contingency Deadline, Buyer shall be deemed to have waived the loan contingency.**

24

25  **D.    CASH PURCHASE:** Within  1  business days of Acceptance, Buyer agrees to provide written
26  evidence from a bona fide financial institution of sufficient cash available to complete this purchase. If Buyer does not submit
27  the written evidence within the above period, Seller reserves the right to terminate this Agreement.

28

29  **3.    SALE OF OTHER PROPERTY:**

30  **A.** This Agreement is NOT contingent upon the sale of any property owned by the Buyer. —**OR**—
31  **B.** ☐ (if checked): The attached Contingent Upon Sale Addendum is hereby incorporated into this agreement.

32

33  **4.    FIXTURES AND PERSONAL PROPERTY:** The following items will be transferred, free of liens, with the sale of
34  the Property with no real value unless stated otherwise herein. Unless an item is covered under Section 7(F) of this
35  Agreement, all items are transferred in an "AS IS" condition. All EXISTING fixtures and fittings including, but not limited
36  to: electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fan(s), fireplace insert(s), gas logs and grates, solar
37  power system(s), built-in appliance(s) including ranges/ovens, window and door screens, awnings, shutters, window
38  coverings, attached floor covering(s), television antenna(s), satellite dish(es), private integrated telephone systems, air
39  coolers/conditioner(s), pool/spa equipment, garage door opener(s)/remote control(s), mailbox, in-ground landscaping,
40  trees/shrub(s), water softener(s), water purifiers, security systems/alarm(s).

41

42  The    following    additional    items    of    personal    property    are    also    included:

43  _____

44  _____

45  _____

46  _____

47  _____

48  _____

49  _____

50  _____

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is
otherwise modified by addendum or counteroffer.

Buyer's Name(s):    **David M Shaheen**        **Linda F Shaheen**    BUYER(S) INITIALS:  DS  LS

Property Address:    **223  Pelton**            **Lane**    SELLER(S) INITIALS:  EMB

DocuSign Envelope ID: 5F2E0332C1E72A-45BA-BB45-1D682963D264

5.    **ESCROW:**

    A.    **OPENING OF ESCROW:** The purchase of the Property shall be consummated through Escrow ("Escrow"). Opening of Escrow shall take place by the end of one (1) business day after Acceptance of this Agreement ("Opening of Escrow"), at _____**Stewart Title**_____ title or escrow company ("Escrow Company" or "ESCROW HOLDER") with _____**Colleen Felix**_____ ("Escrow Officer") (or such other escrow officer as Escrow Company may assign). Opening of Escrow shall occur upon Escrow Company's receipt of this fully accepted Agreement. ESCROW HOLDER is instructed to notify the Parties (through their respective Agents) of the opening date and the Escrow Number.

    B.    **EARNEST MONEY:** Upon Acceptance, Buyer's EMD as shown in Section 1(A), and 1(B) if applicable, of this Agreement, shall be deposited pursuant to the language in Section 1(A) and 1(B) if applicable.

    C.    **CLOSE OF ESCROW:** Close of Escrow ("COE") shall be on or before **See additional terms** (date). If the designated date falls on a weekend or holiday, COE shall be the next business day.

    D.    **IRS DISCLOSURE:** Seller is hereby made aware that there is a regulation that requires all ESCROW HOLDERS to complete a modified 1099 form, based upon specific information known only between parties in this transaction and the ESCROW HOLDER. Seller is also made aware that ESCROW HOLDER is required by federal law to provide this information to the Internal Revenue Service after COE in the manner prescribed by federal law.

6.    **TITLE INSURANCE:** This Purchase Agreement is contingent upon the Seller's ability to deliver, good and marketable title as evidenced by a policy of title insurance, naming Buyer as the insured in an amount equal to the purchase price, furnished by the title company identified in Section 5(A). Said policy shall be in the form necessary to effectuate marketable title or its equivalent and shall be paid for as set forth in Section 8(A).

7.    **BUYER'S DUE DILIGENCE:** Buyer's obligation ☐ **is** –OR– ☒ **is not** conditioned on the Buyer's Due Diligence as defined in this section 7(A) below. This condition is referred to as the "Due Diligence Condition" if checked in the affirmative, Sections 7 (A) through (C) shall apply; otherwise, they do not. Buyer shall have _____ calendar days following the date of Acceptance of the RPA (as defined in Section 23 herein) to complete Buyer's Due Diligence. Seller agrees to cooperate with Buyer's Due Diligence. **Seller shall ensure that all necessary utilities (gas, power and water) and all operable pilot lights are on for Buyer's investigations and through the close of escrow.**

    A.    **PROPERTY INSPECTION/CONDITION:** During the Due Diligence Period, Buyer shall take such action as Buyer deems necessary to determine whether the Property is satisfactory to Buyer including, but not limited to, whether the Property is insurable to Buyer's satisfaction, whether there are unsatisfactory conditions surrounding or otherwise affecting the Property (such as location of flood zones, airport noise, noxious fumes or odors, environmental substances or hazards, whether the Property is properly zoned, locality to freeways, railroads, places of worship, schools, golf courses, etc.) or any other concerns Buyer may have related to the Property. During such Period, Buyer shall have the right to conduct, non-invasive/ non-destructive inspection of all structural, roofing, mechanical, electrical, plumbing, heating/air conditioning, water/well/septic, pool/spa, survey, square footage, and any other property or systems, through licensed and bonded contractors or other qualified professionals. Seller agrees to provide reasonable access to the Property to Buyer and Buyer's inspectors. Buyer agrees to indemnify and hold Seller harmless with respect to any injuries suffered by Buyer or third parties present at Buyer's request while on Seller's Property conducting such inspections, tests or walk-throughs. Buyer's indemnity shall not apply to any injuries suffered by Buyer or third parties present at Buyer's request that are the result of an intentional tort, gross negligence or any misconduct or omission by Seller, Seller's Agent or other third parties on the Property. Buyer is advised to consult with appropriate professionals regarding neighborhood or Property conditions, including but not limited to: schools; proximity and adequacy of law enforcement; proximity to commercial, industrial, or agricultural activities; crime statistics; fire protection; other governmental services; existing and proposed transportation; construction and development; noise or odor from any source; and other nuisances, hazards or circumstances. If Buyer cancels this Agreement due to a specific inspection report, Buyer shall provide Seller at the time of cancellation with a copy of the report containing the name, address, and telephone number of the inspector.

    B.    **BUYER'S RIGHT TO CANCEL OR RESOLVE OBJECTIONS:** If Buyer determines, in Buyer's sole discretion, that the results of the Due Diligence are unacceptable, Buyer may either: (i) no later than the Due Diligence Deadline referenced in Section 7, cancel the Residential Purchase Agreement by  providing written notice to the Seller, whereupon the Earnest Money Deposit referenced in Section 1(A) shall be released to the Buyer without the requirement of further written authorization from Seller; or (ii) no later than the Due Diligence Deadline referenced in Section 7, resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence.

    C.    **FAILURE TO CANCEL OR RESOLVE OBJECTIONS:** If Buyer fails to cancel the Residential Purchase Agreement or fails to resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence, as provided in Section 7, **Buyer shall be deemed to have waived the Due Diligence Condition.**

**BUYER'S INITIALS:** _DS_ / _LS_ / _____ / _____

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name(s):  **David M Shaheen**    **Linda F Shaheen**    BUYER(S) INITIALS  _DS_ _LS_ / _____

Property Address:  **223  Pelton**    **Lane**    SELLER(S) INITIALS  _EMB_ / _____ / _____

Residential Purchase Agreement Rev. 01/23
©2022 Greater Las Vegas Association of REALTORS®

This form presented by Karen Bruno | Dickson Realty | 775-831-8400 | kbruno@dicksonrealty.com    Page 3 of 11    **TRANSACTIONS**

DocuSign Envelope ID: 42ED3320-EB7A-40BA-BB45-1D682963D264

1     **D.**     **INSPECTIONS:** Acceptance of this offer is subject to the following reserved right. Buyer may have the
2 Property inspected and select the licensed contractors, certified building inspectors and/or other qualified professionals who
3 will inspect the Property. Seller will ensure that necessary utilities (gas, power and water and all operable pilot lights) are
4 turned on and supplied to the Property within two (2) business days after Acceptance of this Agreement, to remain on until
5 COE. It is strongly recommended that Buyer retain licensed Nevada professionals to conduct inspections. If any inspection is
6 not completed and requested repairs are not delivered to Seller within the Due Diligence Period, Buyer is deemed to have
7 waived the right to that inspection and Seller's liability for the cost of all repairs that inspection would have reasonably
8 identified had it been conducted, except as otherwise provided by law. The foregoing expenses for inspections will be paid
9 outside of Escrow unless the Parties present instructions to the contrary prior to COE, along with the applicable invoice.
10 (Identify which party shall pay for the inspection noted below either: SELLER, BUYRE, 50/50, WAIVED OR N/A.)

| Type | Paid By | Type | Paid By | Type | Paid By |
|------|---------|------|---------|------|---------|
| Energy Audit | **Waived** | Fungal Contaminant | **Waived** | Well Inspection | **N/A** |
| Home Inspection | **Waived** | Mechanical Inspection | **Waived** | Well Inspection (Quality) | **N/A** |
| Termite/Pest Inspection | **Waived** | Pool/Spa Inspection | **N/A** | Wood-Burning Device/Chimney Inspection | **Waived** |
| Roof Inspection | **Waived** | Soils Inspection | **Waived** | Septic Inspection | **N/A** |
| Septic Lid Removal | **N/A** | Septic Pumping | **N/A** | Structural Inspection | **Waived** |
| Survey (type): | **Waived** | Elevator: | **N/A** | Other: | |

11     **E.**     **CERTIFICATIONS:** In the event an inspection reveals areas of concern with the roof, septic system, well,
12 wood burning device/chimney or the possible presence of a fungal contaminant, Buyer reserves the right to require a
13 certification. The expenses for certifications will be paid outside of Escrow unless the Parties present instructions to the
14 contrary prior to COE (along with the applicable invoice). A certification is not a warranty.

15     **F.**     **BUYER'S REQUEST FOR REPAIRS:** It is Buyer's responsibility to inspect the Property sufficiently as
16 to satisfy Buyer's use. Buyer reserves the right to request repairs, based upon the Seller's Real Property Disclosure or items
17 which materially affect value or use of the Property revealed by an inspection, certification or appraisal. Items of a general
18 maintenance or cosmetic nature which do not materially affect value or use of the Property, which existed at the time of
19 Acceptance and which are not expressly addressed in this Agreement are deemed accepted by the Buyer, except as otherwise
20 provided in this Agreement. The Brokers herein have no responsibility to assist in the payment of any repair, correction or
21 deferred maintenance on the Property which may have been revealed by the above inspections, agreed upon by the Buyer and
22 Seller or requested by one party.

23     **8.**     **FEES, AND PRORATIONS** (Identify which party shall pay the costs noted below either: SELLER, BUYER,
24 50/50, WAIVED or N/A.)

25     **A.**     **TITLE, ESCROW & APPRAISAL FEES:**

| Type | Paid By | Type | Paid By | Type | Paid By |
|------|---------|------|---------|------|---------|
| Escrow Fees | **Buyer** | Lender's Title Policy | **N/A** | Owner's Title Policy | **Buyer** |
| Real Property Transfer Tax | **Buyer** | Appraisal | **Waived** | Other: | |

26     **B.**     **PRORATIONS:** Any and all rents, taxes, interest, homeowner association fees, trash service fees,
27 payments on bonds, SIDs, LIDs, and assessments assumed by the Buyer, and other expenses of the property shall be prorated
28 as of the date of the recordation of the deed. Security deposits, advance rentals or considerations involving future lease
29 credits shall be credited to the Buyer. All prorations will be based on a 30-day month and will be calculated as of COE.
30 Prorations will be based upon figures available at closing. Any supplements or adjustments that occur after COE will be
31 handled by the parties outside of Escrow.

32     **C. PRELIMINARY TITLE REPORT:** Within ten (10) business days of Opening of Escrow, Title Company shall
33 provide Buyer with a Preliminary Title Report ("PTR") to review, which must be approved or rejected within five (5)
34 business days of receipt thereof. If Buyer does not object to the PTR within the period specified above, the PTR shall be
35 deemed accepted. If Buyer makes an objection to any item(s) contained within the PTR, Seller shall have five (5) business
36 days after receipt of objections to correct or address the objections. If, within the time specified, Seller fails to have each
37 such exception removed or to correct each such objection, Buyer shall have the option to: (a) terminate this Agreement by
38 providing notice to Seller and Escrow Officer, entitling Buyer to a refund of the EMD or (b) elect to accept title to the
39 Property as is. All title exceptions approved or deemed accepted are hereafter collectively referred to as the "Permitted
40 Exceptions."

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is
otherwise modified by addendum or counteroffer.

Buyer's Name(s):   **David M Shaheen**      **Linda F Shaheen**     BUYER(S) INITIALS: DS / LS /

Property Address:   **223    Pelton**            **Lane**     SELLER(S) INITIALS: EMB / /

Residential Purchase Agreement Rev. 01/23
©2022 Greater Las Vegas Association of REALTORS®

This form presented by Karen Bruno | Dickson Realty | 775-831-8400 | kbruno@dicksonrealty.com     Page 4 of 11    TRANSACTIONS
TransactionDesk Edition

DocuSign Envelope ID: 5F2E-D632-C1E72A-46BA-BB45-1D682963D264

1    **D.    CLOSING FEES: In addition** to Seller's expenses identified herein, Seller will contribute
2    $_____0.00_____ to Buyer's Lender's Fees ☐ including –OR– ☐ **excluding** costs which Seller must pay pursuant to
3    loan program requirements, Title and Escrow Fees and/or Buyer's reoccurring and non-reoccurring closing fees that may
4    include brokerage Commissions not covered as part of the cooperation offered but not limited to. Different loan types (e.g.,
5    FHA, VA, conventional) have different appraisal and financing requirements, which will affect the parties' rights and costs
6    under this Agreement.

7    **E.    HOME PROTECTION PLAN:** Buyer and Seller acknowledge that they have been made aware of Home
8    Protection Plans that provide coverage to Buyer after COE. **Buyer** ☐ **waives –OR– ☒ requires** a Home Protection Plan
9    with _____Fidelity and paid for by Buyer's Agent_____. ☐ **Seller –OR–** ☐ **Buyer** will pay for the Home
10    Protection Plan at a price not to exceed $_____. **Buyer** will order the Home Protection Plan. Neither Seller nor
11    Brokers make any representation as to the extent of coverage or deductibles of such plans.

12    **9.    TRANSFER OF TITLE:** Upon COE, Buyer shall tender to Seller the agreed upon Purchase Price, and Seller shall
13    tender to Buyer marketable title to the Property free of all encumbrances other than (1) current real property taxes, (2)
14    covenants, conditions and restrictions (CC&R's) and related restrictions, (3) zoning or master plan restrictions and public
15    utility easements; and (4) obligations assumed, and encumbrances accepted by Buyer prior to COE. Buyer is advised the
16    Property may be reassessed after COE which may result in a real property tax increase or decrease.

17    **10.    COMMON-INTEREST COMMUNITIES:** If the Property is subject to a Common Interest Community ("CIC"),
18    **Seller shall provide AT SELLER'S EXPENSE the CIC documents as required by NRS 116.4109** (collectively, the
19    "resale package"). Seller shall request the resale package within two (2) business days of Acceptance and provide the same to
20    Buyer within one (1) business day of Seller's receipt thereof.

21    • **Pursuant to NRS 116.4109, Buyer may cancel this Agreement without penalty until midnight of the fifth**
22      **(5th) calendar day following the date of receipt of the resale package.** If Buyer elects to cancel this
23      Agreement pursuant to this statute, he/she must deliver, via hand delivery, prepaid U.S. mail, or electronic
24      transmission, a written notice of cancellation to Seller or his or her authorized agent.
25    • **If Buyer does not receive the resale package within fifteen (15) calendar days of Acceptance, this**
26      **Agreement may be cancelled in full by Buyer without penalty.** Notice of cancellation shall be delivered
27      pursuant to Section 24 of the RPA.
28    • Upon such written cancellation, Buyer shall promptly receive a refund of the EMD. The parties agree to execute
29      any documents requested by ESCROW HOLDER to facilitate the refund. If written cancellation is not received
30      within the specified time period, the resale package will be deemed approved. Seller shall pay all outstanding
31      CIC fines or penalties at COE.

32    **A.    CIC RELATED EXPENSES:** (Identify which party shall pay the costs noted below either: SELLER,
33    BUYER, 50/50, WAIVED or N/A.)

| Type | Paid By | Type | Paid By | Type | Paid By |
|------|---------|------|---------|------|---------|
| CIC Demand | | CIC Capital Contribution | | CIC Transfer Fee/Setup Fee | |
| Final Inspection Fee | | Open/Close Fee | | | |

34

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name(s):    David M Shaheen        Linda F Shaheen    BUYER(S) INITIALS DS  LS

Property Address:    223  Pelton                    Lane    SELLER(S) INITIALS EMB

Residential Purchase Agreement Rev. 01/23
©2022 Greater Las Vegas Association of REALTORS®

This form presented by Karen Bruno | Dickson Realty | 775-831-8400 | kbruno@dicksonrealty.com    Page 5 of 11    TRANSACTIONS

DocuSign Envelope ID: 42ED832C4E72A-40BA-BB45-1D682963D264

1  **11.     DISCLOSURES: Within five (5) calendar days of Acceptance of this Agreement,** Seller will provide the
2  following Disclosures and/or documents. **Check applicable boxes.**

3      ☒ **Seller Real Property Disclosure Form:** (NRS 113.130)
4      ☐ **Open Range Disclosure:** (NRS 113.065)
5      ☐ **Construction Defect Claims Disclosure:** If Seller has marked "Yes" to Paragraph 1(d) of the Sellers Real
6      Property Disclosure Form (NRS 40.688)
7      ☐ **Lead-Based Paint Disclosure and Acknowledgement:** required if constructed before 1978 (24 CFR 745.113)
8      ☐ **"Hey…" It's A Smart Home Disclosure**
9      ☐ **Solar Panel (Photovoltaic-PV)**
10     ☐ **Other:** (list) _____.

11 **12.     FEDERAL FAIR HOUSING COMPLIANCE AND DISCLOSURES:** All properties are offered without regard
12 to race, color, religion, sex, national origin, age, gender identity or expression, familial status, sexual orientation, ancestry, or
13 handicap and any other current requirements of federal or state fair housing laws.
14

15 **13.     WALK-THROUGH INSPECTION OF PROPERTY:** Buyer is entitled under this Agreement to a walk-through
16 of the Property within __1__ calendar days prior to COE to ensure the Property and all major systems, appliances,
17 heating/cooling, plumbing and electrical systems and mechanical fixtures are as stated in Seller's Real Property Disclosure
18 Statement, and that the Property and improvements are in the same general condition as when this Agreement was Accepted
19 by Seller and Buyer. To facilitate Buyer's walk-through, Seller is responsible for keeping all necessary utilities on, including
20 all operable pilot lights. If any systems cannot be checked by Buyer on walk-through due to non-access or no
21 power/gas/water, then Buyer reserves the right to hold Seller responsible for defects which could not be detected on walk-
22 through because of lack of such access or power/gas/water. The purpose of the walk-through is to confirm (a) the Property is
23 being maintained (b) repairs, if any, have been completed as agreed, and (c) Seller has complied with Seller's other
24 obligations. **If Buyer elects not to conduct a walk-through inspection prior to COE, then all systems, items and aspects**
25 **of the Property are deemed satisfactory, and Buyer releases Seller's liability for costs of any repair that would have**
26 **reasonably been identified by a walk-through inspection, except as otherwise provided by law.**
27

28 **14.     DELIVERY OF POSSESSION:** Seller shall deliver the Property along with any keys, alarm codes, garage door
29 opener/controls and, if freely transferable, parking permits and gate transponders outside of Escrow, upon COE. Seller agrees
30 to vacate the Property and leave the Property in a neat and orderly, broom-clean condition and tender possession no later than
31 ☒ **COE –OR–** _____. In the event Seller does not vacate the Property by this time, Seller shall be
32 considered a trespasser in addition to Buyer's other legal and equitable remedies. Any personal property left on the Property
33 after the date indicated in this section shall be considered abandoned by Seller.
34

35 **15.     RISK OF LOSS:** Risk of loss shall be governed by NRS 113.040. This law provides generally that if all or any
36 material part of the Property is destroyed before transfer of legal title or possession, Seller cannot enforce the Agreement and
37 Buyer is entitled to recover any portion of the sale price paid. If legal title or possession has transferred, risk of loss shall
38 shift to Buyer.
39

40 **16.     ASSIGNMENT OF THIS AGREEMENT:** Unless otherwise stated herein, this Agreement is non-assignable
41 unless agreed upon in writing by all parties.
42

43 **17.     CANCELLATION OF AGREEMENT:** In the event this Agreement is properly cancelled in accordance with the
44 terms contained herein, then Buyer will be entitled to a refund of the EMD. Neither Buyer nor Seller will be reimbursed for
45 any expenses incurred in conjunction with due diligence, inspections, appraisals or any other matters pertaining to this
46 transaction (unless otherwise provided herein or except as otherwise provided by law).
47

48 **18.     DEFAULT:**
49      **A.     MEDIATION:** Before any legal action is taken to enforce any term or condition under this Agreement, the
50 parties agree to engage in mediation, a dispute resolution process, through a mediator mutually agreed upon by the parties.
51 Mediation fees, if any, shall be divided equally among the parties involved. Notwithstanding the foregoing, in the event the
52 Buyer finds it necessary to file a claim for specific performance, this section shall not apply. Each party is encouraged to have
53 an independent lawyer of their choice review this mediation provision before agreeing thereto. By initialing below, the parties
54 confirm that they have read and understand this section and voluntarily agree to the provisions thereof.
55

56 **BUYER(S) INITIALS:** [DS] [LS] / / ___        **SELLER(S) INITIALS:** [EMB] / / ___

**Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name(s):  **David M Shaheen**          **Linda F Shaheen**     BUYER(S) INITIALS: [DS] [LS] / ___

Property Address:  **223   Pelton**                          **Lane**     SELLER(S) INITIALS: [EMB] / / ___

DocuSign Envelope ID: 5E88332C4E72A47BA-BB45-1D682963D264

**B.    IF SELLER DEFAULTS:** If Seller defaults in performance under this Agreement, Buyer reserves all legal and/or equitable rights (such as specific performance) against Seller, and Buyer may seek to recover Buyer's actual damages incurred by Buyer due to Seller's default.

**C.    IF BUYER DEFAULTS: If Buyer defaults in performance under this Agreement,** as Seller's sole legal recourse, Seller may retain, as liquidated damages, the EMD. In this respect, the Parties agree that Seller's actual damages would be difficult to measure and that the EMD is in fact a reasonable estimate of the damages that Seller would suffer as a result of Buyer's default.  Seller understands that any additional deposit not considered part of the EMD in Section 1(B) herein will be immediately released by ESCROW HOLDER to Buyer.

## Instructions to Escrow

**19.    ESCROW:** If this Agreement or any matter relating hereto shall become the subject of any litigation or controversy, Buyer and Seller agree, jointly and severally, to hold ESCROW HOLDER free and harmless from any loss or expense, except losses or expenses as may arise from ESCROW HOLDER's negligence or willful misconduct.  If conflicting demands are made upon ESCROW HOLDER with respect to this Agreement, the parties expressly agree that Escrow is entitled to file a suit in interpleader and obtain an order from the Court authorizing ESCROW HOLDER to deposit all such documents and monies with the Court and obtain an order from the Court requiring the parties to interplead and litigate their several claims and rights among themselves.  Upon the entry of an order authorizing such Interpleader, ESCROW HOLDER shall be fully released and discharged from any obligations imposed upon it by this Agreement; and ESCROW HOLDER shall not be liable for the sufficiency or correctness as to form, manner, execution or validity of any instrument deposited with it, nor as to the identity, authority or rights of any person executing such instrument, nor for failure of Buyer or Seller to comply with any of the provisions of any agreement, contract or other instrument filed with ESCROW HOLDER or referred to herein. ESCROW HOLDER's duties hereunder shall be limited to the safekeeping of all monies, instruments or other documents received by it as ESCROW HOLDER, and for their disposition in accordance with the terms of this Agreement.  In the event an action is instituted in connection with this escrow, in which ESCROW HOLDER is named as a party or is otherwise compelled to make an appearance, all costs, expenses, attorney fees, and judgments ESCROW HOLDER may expend or incur in said action, shall be the responsibility of the parties hereto.

**20.    UNCLAIMED FUNDS:**  In the event that funds from this transaction remain in an account, held by ESCROW HOLDER, for such a period of time that they are deemed "abandoned" under the provisions of Chapter 120A of the Nevada Revised Statutes, ESCROW HOLDER is hereby authorized to impose a charge upon the dormant escrow account.  Said charge shall be no less than $5.00 per month and may not exceed the highest rate of charge permitted by statute or regulation. ESCROW HOLDER is further authorized and directed to deduct the charge from the dormant escrow account for as long as the funds are held by ESCROW HOLDER.

## Brokers

**21.    BROKER'S COMPENSATION/FEES:** Buyer herein requires, and Seller agrees, as a condition of this Agreement, that Seller will pay Listing Broker and Buyer's Broker, who becomes by this clause a third-party beneficiary to this Agreement, that certain sum and/or percentage of the Purchase Price (commission), that Seller, or Seller's Broker, offered for the procurement of ready, willing and able Buyer via the Multiple Listing Service, any other advertisement or written offer. Seller understands and agrees that if Seller defaults hereunder, Buyer's Broker, as a third-party beneficiary of this Agreement, has the right to pursue all legal recourse against Seller for any commission due.  **In addition to any amount due to Buyer's Broker from Seller or Seller's Broker, Buyer ☐ will –OR– ☐ will not pay Buyer's Broker additional compensation in an amount determined between the Buyer and Buyer's Broker.**

**22.    HOLD HARMLESS AND WAIVER OF CLAIMS:** Buyer and Seller agree that they are not relying upon any representations made by Brokers or Broker's agent. Buyer acknowledges that at COE, the Property will be sold AS-IS, WHERE-IS without any representations or warranties, unless expressly stated herein.  Buyer agrees to satisfy himself/herself, as to the condition of the Property, prior to COE.  Buyer acknowledges that any statements of acreage or square footage by Brokers are simply estimates, and Buyer agrees to make such measurements, as Buyer deems necessary, to ascertain actual acreage or square footage.  Buyer waives all claims against Brokers or their agents for (a) defects in the Property; (b)

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified or counteroffer.

Buyer's Name(s):   David M Shaheen          Linda F Shaheen          BUYER(S) INITIALS  DS  LS  /  /

Property Address:   223  Pelton                       Lane         SELLER(S) INITIALS  EMB  /  /  /



DocuSign Envelope ID: 5F2ED332C1872A49BA-BB45-1D682963D264

inaccurate estimates of acreage or square footage; (c) environmental waste or hazards on the Property; (d) the fact that the Property may be in a flood zone; (e) the Property's proximity to freeways, airports or other nuisances; (f) the zoning of the Property; (g) tax consequences; or (h) factors related to Buyer's failure to conduct walk-throughs or inspections. Buyer assumes full responsibility for the foregoing and agrees to conduct such tests, walk-throughs, inspections and research, as Buyer deems necessary. In any event, Broker's liability is limited, under any and all circumstances, to the amount of that Broker's commission/fee received in this transaction.

---

## Other Matters

**23.** **DEFINITIONS: "Acceptance"** means the date that both parties have consented to a final, binding contract by affixing their signatures to this Agreement and all counteroffers and said Agreement and all counteroffers have been delivered to both parties pursuant to Section 24 herein. **"Agent"** means a licensee working under a Broker or licensees working under a developer. **"Agreement"** includes this document as well as all accepted counteroffers and addenda. **"Appraisal"** means a written appraisal or Notice of Value as required by any lending institution prepared by a licensed or certified professional. **"Bona Fide"** means genuine. **"Buyer"** means one or more individuals or the entity that intends to purchase the Property. **"Broker"** means the Nevada licensed real estate broker listed herein representing Seller and/or Buyer (and all real estate agents associated therewith). **"Business Day"** excludes Saturdays, Sundays, and legal holidays. **"Calendar Day"** means a calendar day from/to midnight unless otherwise specified. **"CFR"** means the Code of Federal Regulations. **"CIC"** means Common Interest Community (formerly known as "HOA" or homeowners associations). **"CIC Capital Contribution"** means a one-time non-administrative fee, cost or assessment charged by the CIC upon change of ownership. **"CIC Transfer Fees"** means the administrative service fee charged by a CIC to transfer ownership records. **"Close of Escrow (COE)"** means the time of recordation of the deed in Buyer's name. **"Default"** means the failure of a Party to observe or perform any of its material obligations under this Agreement. **"Delivered"** means personally delivered to Parties or respective Agents, transmitted by facsimile machine, electronic means, overnight delivery, or mailed by regular mail. **"Down Payment"** is the Purchase Price less loan amount(s). **"EMD"** means Buyer's earnest money deposit. **"Escrow Holder"** means the neutral party that will handle the closing. **"FHA"** is the U.S. Federal Housing Administration. **"IVR"** means the Incline Village REALTORS®. **"Good Funds"** means an acceptable form of payment determined by ESCROW HOLDER in accordance with NRS 645A.171. **"IRC"** means the Internal Revenue Code (tax code). **"LID"** means Limited Improvement District. **"N/A"** means not applicable. **"NAC"** means Nevada Administrative Code. **"NRS"** means Nevada Revised Statues as Amended. **"Party"** or **"Parties"** means Buyer and Seller. **"PITI"** means principal, interest, taxes, and hazard insurance. **"PMI"** means private mortgage insurance. **"PST"** means Pacific Standard Time and includes daylight savings time if in effect on the date specified. **"PTR"** means Preliminary Title Report. **"Property"** means the real property and any personal property included in the sale as provided herein. **"Receipt"** means delivery to the party or the party's agent. **"RPA"** means Residential Purchase Agreement. **"Seller"** means one or more individuals or the entity that is the owner of the Property. **"SID"** means Special Improvement District. **"Title Company"** means the company that will provide title insurance. **"USC"** is the United States Code. **"VA"** is the Veterans Administration.

**24.** **SIGNATURES, DELIVERY, AND NOTICES:**
   **A.** This Agreement may be signed by the parties on more than one copy, which, when taken together, each signed copy shall be read as one complete form. This Agreement (and documents related to any resulting transaction) may be signed by the parties manually or digitally. Facsimile signatures may be accepted as original.
   **B.** When a Party wishes to provide notice as required in this Agreement, such notice shall be sent regular mail, personal delivery, overnight delivery, by facsimile, and/or by electronic transmission to the Agent for that Party. The notification shall be effective when postmarked, received, faxed, delivery confirmed, and/or read receipt confirmed in the case of email. Delivery of all instruments or documents associated with this Agreement shall be delivered to the Agent for Seller or Buyer if represented. Any cancellation notice shall be contemporaneously delivered to Escrow in the same manner.

**25.** **IRC 1031 EXCHANGE:** Seller and/or Buyer may make this transaction part of an IRC 1031 exchange. The party electing to make this transaction part of an IRC 1031 exchange will pay all additional expenses associated therewith, at no cost to the other party. The other party agrees to execute any and all documents necessary to effectuate such an exchange.

---

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

| | | |
|---|---|---|
| Buyer's Name(s): **David M Shaheen** | **Linda F Shaheen** | BUYER(S) INITIALS [DS] [LS] |
| Property Address: **223  Pelton** | **Lane** | SELLER(S) INITIALS [GMB] |

DocuSign Envelope ID: 6F2ED832-C1E7-45BA-BB45-1D682963D264

1  **26.      HUD/VA/FHA ESCAPE CLAUSE:** "It is expressly agreed that, notwithstanding any other provisions of this
2  contract, the purchaser shall not be obligated to complete the purchase of the property described herein or incur any penalty
3  by forfeiture of earnest money or otherwise unless the purchaser has been given, in accordance with HUD/FHA or VA
4  requirements, a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct
5  Endorsement Lender setting forth the appraised value of the property of not less that the agreed upon contract purchase price.
6  The purchaser shall, however, have the privilege and option of proceeding with the consummation of this contract without
7  regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage
8  the Department of Housing and Urban Development will insure or percent the Department of Veterans Affairs will guarantee.
9  HUD/FHA or VA does not warrant the value or condition of the property. The purchaser should satisfy himself/herself that
10  the price and condition of the property are acceptable.
11
12  **27.      OTHER ESSENTIAL TERMS:** Time is of the essence. No change, modification or amendment of this Agreement
13  shall be valid or binding unless such change, modification or amendment shall be in writing and signed by each party. This
14  Agreement will be binding upon the heirs, beneficiaries and devisees of the parties hereto. This Agreement is executed and
15  intended to be performed in the State of Nevada, and the laws of that state shall govern its interpretation and effect. The
16  parties agree that the county and state in which the Property is located is the appropriate forum for any action relating to this
17  Agreement. Should any party hereto retain counsel for the purpose of initiating litigation to enforce or prevent the breach of
18  any provision hereof, or for any other judicial remedy, then the prevailing party shall be entitled to be reimbursed by the
19  losing party for all costs and expenses incurred thereby, including, but not limited to, reasonable attorney's fees and costs
20  incurred by such prevailing party.
21
22      **THIS IS A LEGALLY BINDING CONTRACT. All parties are advised to seek independent legal**
23              **and tax advice to review the terms of this Agreement.**
24
25  **THIS FORM HAS BEEN APPROVED BY THE INCLINE VILLAGE REALTORS® (IVR). NO
26  REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY
27  SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL
28  ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE
29  PROFESSIONAL.**
30
31  **28.      ADDENDUM/ADDENDA ATTACHED:** _____
32  _____
33  _____
34
35  **29.      ADDITIONAL TERMS:**
    1. Seller shall provide clear and warranted title free of all debts.
36  2. Close of escrow shall be 3 business days after Court Approval.
    3. Buyer shall purchase an extended ALTA policy.
37  4. Property is being purchased in an AS-IS condition.
38
39
40
41
42
43
44
45
46
47
48

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is
otherwise modified by addendum or counteroffer.
Buyer's Name(s):   David M Shaheen          Linda F Shaheen     BUYER(S) INITIALS: [DS]  [LS]  /

Property Address:   223  Pelton                      Lane    SELLER(S) INITIALS: [EMB]  /

Residential Purchase Agreement Rev. 01/23
©2022 Greater Las Vegas Association of REALTORS®
This form presented by Karen Bruno | Dickson Realty | 775-831-8400 | kbruno@dicksonrealty.com    Page 9 of 11    TRANSACTIONS
                                                                                                  TransactionDesk Edition

DocuSign Envelope ID: 52ED83C0-E72A-46BA-BB45-1D682963D264

## Buyer's Acknowledgement of Offer

**Confirmation of Representation:** The Buyer is represented in this transaction by:

| | | | | |
|---|---|---|---|---|
| Buyer's Broker: | **Mary Jurkonis** | Agent's Name: | **Karen Bruno** | |
| Company Name: | **Dickson Realty** | Agent's License Number: | **S.37064** | |
| Broker's License Number: | | Office Address: | **930 Tahoe Boulevard Ste 902** | |
| Phone: | **775-831-8400** | City, State, Zip: | **Incline Village** | **NV**  **89451** |
| Fax: | | Email: | **kbruno@dicksonrealty.com** | |

**BUYER LICENSEE DISCLOSURE OF INTEREST:** Pursuant to NRS 645.252(1)(c), a real estate licensee must disclose if he/she is a principal in a transaction or has an interest in a principal to the transaction. Licensee declares that he/she: ☒ **DOES NOT** have an interest in a principal to the transaction. **–OR–** ☐ **DOES** have the following interest, direct or indirect, in this transaction: ☐ Principal (Buyer) **–OR–** ☐ family or firm relationship with Buyer or ownership interest in Buyer (if Buyer is an entity): (specify relationship) Buyer's licensee represented the seller when the current occupant purchased the property. Seller at that time carried a 2nd deed of trust on the property.

**Seller must respond by:** __3:00__ (☐AM ☒PM) on (month) __August__, (day) __1__, (year) __2023__. Unless this Agreement is accepted, rejected or countered below and delivered to the Buyer's Broker before the above date and time, this offer shall lapse and be of no further force and effect. Upon Acceptance, Buyer agrees to be bound by each provision of this Agreement, and all signed addenda, disclosures, and attachments.

| | | | |
|---|---|---|---|
| *David Shaheen* (DocuSigned by) | David M Shaheen | 7/30/2023 | ☐ AM ☐ PM |
| Buyer's Signature | Buyer's Printed Name | Date | Time |
| *Linda Shaheen* (DocuSigned by) | Linda F Shaheen | 7/30/2023 | ☐ AM ☐ PM |
| Buyer's Signature | Buyer's Printed Name | Date | Time |
| | | | ☐ AM ☐ PM |
| Buyer's Signature | Buyer's Printed Name | Date | Time |
| | | | ☐ AM ☐ PM |
| Buyer's Signature | Buyer's Printed Name | Date | Time |

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

| | | | | |
|---|---|---|---|---|
| Buyer's Name(s): | David M Shaheen | Linda F Shaheen | BUYER(S) INITIALS | DS  LS |
| Property Address: | 223  Pelton | Lane | SELLER(S) INITIALS | EMB |

DocuSign Envelope ID: 42EB532D-1E72A-46BA-BB45-1D682963D264

---

## Seller's Response

**Confirmation of Representation**: The Seller is represented in this transaction by:

Seller's Broker: __Bryan Raydon__      Agent's Name: __Laura Kirsch__

Company Name: __Marmot Properties__      Agent's License Number: __S.176875__

Broker's License Number: __B.1000828__      Office Address: __22 W Taylor__

Phone: _____      City, State, Zip: __Reno, NV 89509__

Fax: _____      Email: __Laura@MarmotProperties.com__

**SELLER LICENSEE DISCLOSURE OF INTEREST**: Pursuant to NRS 645.252(1)(c), a real estate licensee must disclose if he/she is a principal in a transaction or has an interest in a principal to the transaction. Licensee declares that he/she: ☒ **DOES NOT** have an interest in a principal to the transaction. –OR– ☐ **DOES** have the following interest, direct or indirect, in this transaction: ☐ Principal (Seller) –OR– ☐ family or firm relationship with Seller or ownership interest in Seller (if Seller is an entity): (specify relationship)_____.

☐ **FIRPTA**: If applicable (as designated in the Seller's Response herein), Seller agrees to complete, sign, and deliver to Buyer's FIRPTA Designee a certificate indicating whether Seller is a foreign person or a nonresident alien pursuant to the Foreign Investment in Real Property Tax Act (FIRPTA). A foreign person is a nonresident alien individual; a foreign corporation not treated as a domestic corporation; or a foreign partnership, trust or estate. A resident alien is not considered a foreign person under FIRPTA. Additional information for determining status may be found at www.irs.gov. Buyer and Seller understand that if Seller is a foreign person then the Buyer must withhold a tax in an amount to be determined by Buyer's FIRPTA Designee in accordance with FIRPTA, unless an exemption applies. Seller agrees to sign and deliver to the Buyer's FIRPTA Designee the necessary documents, to be provided by the Buyer's FIRPTA Designee, to determine if withholding is required. (See 26 USC Section 1445).

SELLER DECLARES that he/she ☒ **is not** –OR– ☐ is a foreign person therefore subjecting this transaction to FIRPTA withholding. **SELLER(S) INITIALS:** _EMB_ / _____ / _____ / _____

☐ **ACCEPTANCE:** Seller(s) acknowledges that he/she accepts and agrees to be bound by each provision of this Agreement, and all signed addenda, disclosures, and attachments.

☒ **COUNTER OFFER:** Seller accepts the terms of this Agreement subject to the attached Counter Offer #1.

☐ **REJECTION:** In accordance with NAC 645.632, Seller hereby informs Buyer the offer presented herein **is not** accepted.

| | | | | |
|---|---|---|---|---|
| _Edward M Burr, Trustee_ | Edward M Burr, Trustee | 08/01/23 | | ☐ AM ☐ PM |
| Seller's Signature | Seller's Printed Name | Date | Time | |
| | | | | ☐ AM ☐ PM |
| Seller's Signature | Seller's Printed Name | Date | Time | |
| | | | | ☐ AM ☐ PM |
| Seller's Signature | Seller's Printed Name | Date | Time | |
| | | | | ☐ AM ☐ PM |
| Seller's Signature | Seller's Printed Name | Date | Time | |

---

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name(s): __David M Shaheen__      __Linda F Shaheen__      BUYER(S) INITIALS: _DS_ _LS_ / ____

Property Address: __223  Pelton__      __Lane__      SELLER(S) INITIALS: _EMB_ / ____ / ____

Residential Purchase Agreement Rev. 01/23
©2022 Greater Las Vegas Association of REALTORS®

DocuSign Envelope ID: 649D9EDA-8A6D-4BF5-AAD7-1F90987D2BA6



# COUNTER OFFER #1



1 SELLER submits this Counter Offer #1 to the Offer and Acceptance Agreement dated <u>7/31/2023</u>, regarding the property
2 Located at <u>223    Pelton Ln</u> <u>Incline Village</u> NV <u>89451-9304</u>,
3 between <u>Edward M Burr, Trustee</u> (SELLER)
4 and <u> </u> (BUYER),
5 which is being attached this date <u>8/1/2023</u> by SELLER and becomes effective when signed by all parties.
6 **1) The $100,000 earnest money deposit is placed into escrow right away. Fully refunded if not**
7 **approved by the court.**

8 **2) The sale is subject to bankruptcy court approval.  The court hearing for the approval of the**
9 **sale is currently scheduled for September 5 at 2:00 PM.**
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25 **OTHER TERMS:** All other terms to remain the same.
26
27 **RIGHT TO ACCEPT OTHER OFFERS:** SELLER reserves the right to accept any other offer prior to BUYER's written
28 acceptance of Counter Offer #1. Acceptance shall not be effective until a copy of this Counter Offer #1, dated and signed by
29 BUYER, is received by SELLER and/or <u>Laura Kirsch</u>
30
31 **EXPIRATION**:  This offer shall expire unless a copy with BUYERS's written acceptance is delivered to SELLER or
32 SELLER's Broker or Licensee on or before <u>8</u> o'clock ☐ AM ☒ PM, on <u>8/1/2023</u>.
33
34 SELLER: *Edward M Burr, Trustee* Dated: <u>08/01/2023</u> Time: <u>10:16 AM</u>
35 Edward M Burr, Trustee
36 SELLER: _____ Dated: _____ Time: _____
37
38 SELLER: _____ Dated: _____ Time: _____
39
40 SELLER: _____ Dated: _____ Time: _____
41
42 **BUYER'S ACCEPTANCE, COUNTER, OR REJECTION**
43 ☒**Acceptance of Counter Offer #1:** BUYER accepts this Counter Offer #1.
44 ☐ **Counter Offer #2:** BUYER signs this Counter Offer #1 subject to Counter Offer #2 dated _____,
45 ☐ **Rejection:** BUYER rejects Counter Offer #1.
46 ⎯DocuSigned by:
47 BUYER: *David Shaheen* Dated: <u>8/1/2023</u> Time: _____
48 ⎯DocuSigned by: PK6495...
49 BUYER: *Linda Shaheen* Dated: <u>8/1/2023</u> Time: _____
50 ⎯D1D8A43CDA4F4C4...
51 BUYER: _____ Dated: _____ Time: _____
52
53 BUYER: _____ Dated: _____ Time: _____

Page 1 of 1      This copyright protected form was created by and for the use of the members of SNR.      SNR® 01/23
CO1 1/1

**This copyright protected form was created by members of RSAR and SNR and produced using Instanet**
**Solutions' Instanet Forms service.**



DocuSign Envelope ID: 5A56BF49-3D22-43DE-855B-17DC7A6A4C8B




# ADDENDUM TO RESIDENTIAL PURCHASE AGREEMENT
## NO.  8-2-2023

In reference to the  **Residential Purchase Agreement**  (name of document) (hereinafter "the Agreement") executed by
**David M Shaheen**                **Linda F Shaheen**  as Buyer(s) and  **Edward M Burr, Trustee**
_____  as Seller(s), dated  _____8/1/2023_____  regarding the real property located at
223  Pelton          Lane  Incline Village  NV    89451  ,the ☒ Buyer ☐ Seller hereby proposes that the
Agreement be revised as follows:

Buyers are David M. Shaheen and Linda F. Shaheen, Trustees  of the David and Linda Shaheen Trust, as
first executed on March 5, 2012, as thereafter amended on August 1, 2014, and amended again on June
29, 2017. Buyers are choosing to take title in the name of their Trust.

☐ **ADDITIONAL PAGE(S) ATTACHED. This Addendum is not complete without the additional terms on the attached _____ page(s). When executed by both parties, this Addendum is made an integral part of the aforementioned Agreement.**

**WHEN PROPERLY COMPLETED, THIS IS A BINDING CONTRACT. IF YOU DO NOT FULLY UNDERSTAND ITS CONTENTS, YOU SHOULD SEEK COMPETENT LEGAL COUNSEL BEFORE SIGNING.**

| _David Shaheen_ | 8/2/2023 | _Linda Shaheen_ | 8/2/2023 |
|---|---|---|---|
| ☒ Buyer ☐ Seller David M Shaheen | Date | ☒ Buyer ☐ Seller Linda F Shaheen | Date |
| ☐ Buyer ☐ Seller | Date | ☐ Buyer ☐ Seller | Date |

**ACCEPTANCE/REJECTION (CHECK ONE)**:
☒ ACCEPTANCE: ☒ Seller ☐ Buyer hereby **accepts** the terms of this ADDENDUM.
☐ REJECTION: ☐ Seller ☐ Buyer **rejects** the terms of this ADDENDUM.

| _Edward M Burr, Trustee_ | | | |
|---|---|---|---|
| ☐ Buyer ☒ Seller | Date | ☐ Buyer ☐ Seller | Date |
| ☐ Buyer ☐ Seller | Date | ☐ Buyer ☐ Seller | Date |

# EXHIBIT "2"

**ALTA COMMITMENT FOR TITLE INSURANCE (07-01-2021)**
**SCHEDULE B PART I**

ISSUED BY
STEWART TITLE GUARANTY COMPANY

**File No.:**  2097775

<b>Requirements</b>

All of the following Requirements must be met:

1.  The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2.  Pay the agreed amount for the estate or interest to be insured.

3.  Pay the premiums, fees, and charges for the Policy to the Company.

4.  Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

5.  Show that restrictions or restrictive covenants have not been violated.

6.  Furnish proof of payment of all bills for labor and material furnished or to be furnished in connection with improvements erected or to be erected.

7.  Pay all taxes, charges, and assessments affecting the land that are due and payable.

8.  After the review of all the required documents, the Company reserves the right to add additional items and/or make additional requirements prior to the issuances of any policy of title insurance.

9.  The requirement that payment in full per demand and a release to follow or at close is required for a Deed of Trust to secure an indebtedness in the amount of $424,100.00, dated November 10, 2017, executed by Scott Alan Corridan and Russell Clifford Corridan, Domestic Partners, as Trustor, to Scott Everett, as Trustee, in favor of Mortgage Electronic Registration Systems, Inc. solely as nominee for the Lender, being Everett Financial, Inc. D/B/A Supreme Lending, as Beneficiary, recorded on November 14, 2017 Document No. 4763363, Official Records of Washoe County, Nevada.

    ASSIGNMENT:  The Beneficial interest of record under said Deed of Trust was assigned to Northpointe Bank, a Michigan Banking Corporation, recorded 10/30/2019, Document No. 4967825, of Official Records.

    ASSIGNMENT:  The Beneficial interest of record under said Deed of Trust was assigned to Northpointe Bank, recorded 07/21/2022, Document No. 5319808, of Official Records.

    ASSIGNMENT:  The Beneficial interest of record under said Deed of Trust was assigned to Pingora Loan Servicing, LLC, recorded 11/30/2022, Document No. 5349533, of Official Records.

10. If the interest of the requesting lender under that certain Request for Notice below is eliminated, said Request for Notice will no longer have any effect:

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II -Exceptions; and a countersignature by the Company or its issuing agent that may be in electronic form.*

---

**Copyright 2021 American Land Title Association.  All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited.  Reprinted under license from the American Land Title Association.
File No.: 2097775
ALTA Commitment for Title Insurance Schedule BI (07-01-2021)
Page 4 of  11



Initial _____    Initial _____    Initial _____    Initial _____

**ALTA COMMITMENT FOR TITLE INSURANCE (07-01-2021)**
**SCHEDULE B PART I**

ISSUED BY
STEWART TITLE GUARANTY COMPANY

A Request that a copy of any Notice of Default and any Notice of Sale, pursuant to NRS Chapters 107 or 116, be mailed to NationStar Mortgage, LLC, at the address provided therein, recorded on November 18, 2022 Document No. 5347793, Official Records of Washoe County, Nevada.

11. The requirement that payment in full per demand and a release to follow or at close is required for a Deed of Trust to secure an indebtedness in the amount of $140,000.00, dated November 13, 2017, executed by Scott Alan Corridan and Russell Clifford Corridan, husband and husband, as community property with right of survivorship, as Trustor, to Reliant Title, as Trustee, in favor of Ernest J. Polati, Jr., Trustee of the Shelter Trust Created under the Polati 1996 Trust dated January 3, 1996, as Beneficiary, recorded on November 14, 2017 Document No. 4763364, Official Records of Washoe County, Nevada.

12. The requirement that the terms and conditions are met and a release to follow or at close is required for a Performance Deed of Trust to secure an Agreement, dated February 6, 2020, executed by Scott A. Corridan, as Trustor, to Reynolds Tilbury Woodward LLP, as Trustee, in favor of Thomas Glazier, as Beneficiary, recorded on February 14, 2020 Document No. 5001297, Official Records of Washoe County, Nevada.

A substitution of trustee which names Total Lender Solutions, Inc. as trustee recorded 09/03/2021 as Instrument No. 5222997.

NOTICE OF DEFAULT under the terms of above Lien as follows:

Recorded:  09/03/2021
Document No.: 5222998, of Official Records

State of Nevada Foreclosure Mediation Program Certificate recorded on 06/10/2022 as Instrument No. 5309747.

NOTICE OF TRUSTEE'S SALE under the terms of above Deed of Trust as follows:

Recorded:  06/14/2022
Document No.: 5310333, of Official Records

The Deed of Trust shown as Item 12, is in default.  Contact Trustee for status of foreclosure or for amounts necessary to bring current. (A copy of Notice of Default/Notice of Sale will be furnished upon request.)

13. Intentionally omitted

14. The requirement that payment in full per demand and a release to follow or at close is required for a certified copy of a Judgment in the amount of $9,131.24 plus interest, costs, attorney fees and any other amounts due from Scott A. Corridan, as Debtor, in favor of Department of Employement Training & Rehabilitation, Employement Security Division, as Creditor, in Washoe County of the Washoe, as Case No. CV18-00886, recorded May 10, 2018 Document No. 4813096, Official Records of Washoe County, Nevada.

15. The requirement that payment in full per demand and a release to follow or at close is required for a tax lien for the amount shown and any other amounts due, in favor of the State of Nevada, as Certificate No. 365687 against Scott A. Corridan, as Taxpayer, in the amount of $24,142.51, recorded on May 18, 2018 Document No. 4815646, Official Records of Washoe County, Nevada.

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II -Exceptions; and a countersignature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association.  All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.  Reprinted under license from the American Land Title Association.
File No.: 2097775
ALTA Commitment for Title Insurance Schedule BI (07-01-2021)
Page 5 of  11



Initial        Initial        Initial        Initial



**ALTA COMMITMENT FOR TITLE INSURANCE (07-01-2021)**
**SCHEDULE B PART I**

ISSUED BY
STEWART TITLE GUARANTY COMPANY

16. The requirement that payment in full per demand and a release to follow or at close is required for a certified copy of a Judgment in the amount of $3,235.68 plus interest, costs, attorney fees and any other amounts due from Scott A. Corridan, as Debtor, in favor of Department of Employement Training & Rehabilation, Employement Security Division, as Creditor, in Washoe County of the Washoe, as Case No. CV18-01385, recorded July 17, 2018 Document No. 4833151, Official Records of Washoe County, Nevada.

17. The requirement that payment in full per demand and a release to follow or at close is required for a certified copy of a Judgment in the amount of $2,499.88 plus interest, costs, attorney fees and any other amounts due from Scott A. Corridan, as Debtor, in favor of Department of Employement Training & Rehabilation, Employement Security Division, as Creditor, in Washoe County of the Washoe, as Case No. CV19-00793, recorded April 17, 2019 Document No. 4902836, Official Records of Washoe County, Nevada.

18. Judgment in favor of Steven Baldwin and Terre Baldwin against Scott Corridan, in the amount of $76,138.66 plus court cost & interest, entered on July 31, 2019 as Case Number CV19-01502 and recorded August 1, 2019 as instrument number 4936398, in Washoe County.

    and amended on recorded August 1, 2019 as instrument number 4936399, in Washoe County.

19. The requirement that payment in full per demand and a release to follow or at close is required for a tax lien for the amount shown and any other amounts due, in favor of the State of Nevada, as Certificate No. 379838 against Scott A. Corridan, as Taxpayer, in the amount of $11,180.09, recorded on October 22, 2019 Document No. 4965121, Official Records of Washoe County, Nevada.

    Amendment recorded on November 12, 2019 Document No. 4971970, Official Records of Washoe County, Nevada.

    Amendment recorded on November 19, 2020 Document No. 5105976, Official Records of Washoe County, Nevada.

20. The requirement that payment in full per demand and a release to follow or at close is required for a certified copy of a Judgment in the amount of $16,858.23 plus interest, costs, attorney fees and any other amounts due from Scott Corridan, individually and dba Scott Corridan Design, as Debtor, in favor of Big Water Investments, LLC, a Nevada limited liability company, as Creditor, in Washoe County of the Second Judicial District Court of the State of Nevada in and for the County of Washoe, as Case No. CV19-01689, recorded December 16, 2019 as Document No. 4982828, Official Records of Washoe County, Nevada.

21. The requirement that payment in full per demand and a release to follow or at close is required for a certified copy of a Judgment in the amount of $38,338.47 plus interest, costs, attorney fees and any other amounts due from Scott Corridan dba Scott Corridan Design, as Debtor, in favor of Rock & Rose, Inc, as Creditor, in Washoe County of the Second Judicial District Court of the State of Nevada in and for the County of Washoe, as Case No. CV19-01920, recorded February 11, 2020 as Document No. 4999922, Official Records of Washoe County, Nevada.

22. The requirement that payment in full per demand and a release to follow or at close is required for a certified copy of a Judgment in the amount of $63,497.11 plus interest, costs, attorney fees and any other amounts due from Scott ALan Corridan, as Debtor, in favor of Russell Clifford Corridan, as Creditor, in Washoe County of the Family Division of the Second Judicial District Court of the State of Nevada in and for the County of Washoe, as Case No. DV18-01651, recorded March 31, 2020 as Document No. 5015679, Official Records of Washoe County, Nevada.

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II -Exceptions; and a countersignature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
File No.: 2097775
ALTA Commitment for Title Insurance Schedule BI (07-01-2021)



_____   _____   _____   _____
 Initial     Initial      Initial      Initial

**ALTA COMMITMENT FOR TITLE INSURANCE (07-01-2021)**
**SCHEDULE B PART I**

ISSUED BY
STEWART TITLE GUARANTY COMPANY

23. The requirement that payment in full per demand and a release to follow or at close is required for a Claim of Lien against Scott A & Russell C Corridan in favor of Wyman Development Company, in the amount of $77,952.79 plus interest and costs, recorded on May 26, 2020 as Document No. 5032859, Official Records of Washoe County, Nevada.

24. The requirement for a full value conveyance or a release/abandonment of homestead for a Declaration of Homestead, dated 26 April, 2021, executed by Scott Alan Corridan, an unmarried man, recorded on July 12, 2021 Document No. 5203142, Official Records of Washoe County, Nevada.

25. The requirement that payment in full per demand and a release to follow or at close is required for a tax lien for the amount shown and any other amounts due, in favor of the State of Nevada, as Certificate No. 393423 against Scott A. Corridan, as Taxpayer, in the amount of $87,852.54, recorded on September 16, 2021 Document No. 5227222, Official Records of Washoe County, Nevada.

    Amendment recorded on June 8, 2022 Document No. 5309147, Official Records of Washoe County, Nevada.

26. Judgment in favor of Kevin Horowitz, Sole Properietor of St. Helena Construction Company against Scott A. Corridan, in the amount of $321,107.00 plus court cost & interest, entered on June 8, 2022 as Case Number CV22-00906 and recorded June 29, 2022 as instrument number 5314943, in Washoe County.

27. Subject to the effect of bankruptcy proceedings pending in United States Bankruptcy Court, Nevada District, Case No. 22-50366, filed on July 12, 2022.

    The effect of bankruptcy proceedings of Scott A. Corridan, Debtor in Case No. 22-50366. The Company requires copies of the docket sheet, petition with schedules, and other satisfactory final non-appealable orders, plans, or documents in the bankruptcy proceedings authorizing the contemplated transaction. At the time the Company is furnished these items, the Company may make additional requirements for exceptions.

28. The requirement that an Owner's Declaration/Affidavit be completed, and supplied for review prior to the issuance of a policy of title insurance.

29. The requirement that a copy of the Scott Alan Corridan Family Trust Agreement dated 26 April, 2021 Agreement and any amendments thereto, referred to in the vesting herein, be supplied to this office for review prior to the issuance of any policy of title insurance.

30. NOTES REGARDING THE PROPOSED BUYER, requiring special consideration and/or resolution prior to the close of escrow:

    The requirement that a copy of the David and Linda Shaheen Trust, as first executed on March 5, 2012 Agreement and any amendments thereto, be supplied to this office for review prior to the issuance of any policy of title insurance.

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II -Exceptions; and a countersignature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association.  All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.  Reprinted under license from the American Land Title Association.
File No.: 2097775
ALTA Commitment for Title Insurance Schedule BI (07-01-2021)
Page 7 of  11



_____    _____    _____    _____
  Initial       Initial        Initial        Initial